Catherine Sweetser (SBN 271142)
**UCLA LAW CLINICS**
385 Charles E Young Drive
East Los Angeles, CA 90095
Email(s): csweetser@sshhzlaw.com

Paul Hoffman (SBN 071244)
John Washington (SBN 315991)
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
200 Pier Avenue, #226
Hermosa Beach, CA 90245
Telephone: (310) 396-0731
Email(s): hoffpaul@aol.com
jwashington@sshhzlaw.com

Barrett S. Litt (SBN 45527)
Lindsay Battles (SBN 262862)
**McLANE, BEDNARSKI & LITT, LLP**
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Email(s): blitt@mbllegal.com
lbattles@mbllegal.com

*Attorneys for Plaintiffs, Hugo Gonzalez, Jose Baca, Erick Lopez, Mario Manjarrez, and Ricardo Sandoval Guadarrama*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

HUGO GONZALEZ, JOSE BACA, ERICK LOPEZ, MARIO MANJARREZ, and RICARDO SANDOVAL GUADARRAMA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

The GEO Group, Inc., et al,

Defendant.

CASE NO. 2:22-cv-04014-JGB-ACCV

**PLAINTIFFS' REFILED NOTICE OF MOTION AND MOTION FOR APPROVAL OF CLASS NOTICE**

**[Filed concurrently with Declaration of Lindsay Battles, Exs., Proposed Order]**

**Date: November 9, 2026**
**Time: 9:00 a.m.**
**Ctrm: 1, Riverside**

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, pursuant to this Court's 9/23/26 Order (Dkt. 212), Plaintiffs re-submit their Motion for Approval of Class Notice. On November 9, 2026, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 1 of the United States District Court for the Central District of California, 3470 Twelfth Street, Riverside, California 92501, Plaintiffs will, and hereby do, move the Court for an order approving the issuing of class notice consistent with Federal Rule of Civil Procedure 23(c)(2)(B).

This motion is made pursuant to the Court's 9/23/26 Order (Dkt. 212), and following the conference of counsel pursuant to L.R. 7-3 which took place on July 6, 2026.

This motion is based on this Notice of Motion, the attached Memorandum, the completed filed records in this action, and any such additional materials and arguments as may be considered at the hearing.

Respectfully submitted,

Dated: October 9, 2026

UCLA LAW CLINICS
SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP
McLANE, BEDNARSKI & LITT, LLP

By: */s/ Lindsay Battles*

Catherine Sweetser
UCLA LAW CLINICS

Paul Hoffman
John Washington

Barrett S. Litt
Lindsay Battles
McLane, Bednarski & Litt, LLP

Attorneys for Plaintiffs Hugo Gonzalez, Jose Baca, Erick Lopez, Mario Manjarres and Ricardo Sandoval Guadarrama

# TABLE OF CONTENTS


I. Introduction ........ 1

II. Procedural Background & Plaintiffs' Efforts to Secure Class Data ........ 2

III. Legal Standard ........ 4

IV. Available Class Data ........ 7

A. Data Produced by GEO ........ 7

B. Data Produced by DHS ........ 9

V. Proposed Notice Plan ........ 9

*Direct Mail Notice to Class Members:* ........ 9

*Electronic Direct Notice Via Email, Text Message & Direct Social Media Outreach:* ........ 10

*Emergency Contacts:* ........ 11

*Website & Outreach:* ........ 11

VI. Content of Notice: Proposed Notice ........ 12

VII. Conclusion ........ 12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ....................4, 5

*Finkel v. Newbridge Securities Corp.*,
2014 WL 3579695 (S.D. Fla. July 18, 2014)....................3

*In re Lithium Ion Batteries Antitrust Litig.*,
853 F. App'x 56 (9th Cir. 2021) ....................5

*In re Nissan Motor Corp. Antitrust Litig.*
552 F.2d 1088 (5th Cir. 1977) ....................3, 5

*In re Prudential Ins. Co. of America Sales Practices Litigation*,
177 F.R.D. 216 (D.N.J. 1997)....................4

*Jordan v. Global Natural Resources, Inc.*,
104 F.R.D. 447 (S.D. Ohio 1984)....................7

*Juris v. Inamed Corp.*,
685 F.3d 1294 (11th Cir. 2012) ....................4

*LaVigne v. First Community Bancshares*,
330 F.R.D. 293 (D.N.M. 2019)....................4

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ....................6

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ....................4

*Taqueria El Primo LLC v. Illinois Farmers Insurance Co.*,
630 F.Supp.3d 1121 (D. Minn. 2022)....................6, 9

## Rules

Federal Rule of Civil Procedure 23 .................... Passim

# MEMORANDUM

## I. Introduction

Pursuant to this Court's 9/23/26 Order (Dkt. 212), Plaintiffs re-submit their Motion for Approval of Class Notice with all "short-form" notices (in addition to the long-form notice). While Plaintiffs demonstrated "their proposed means are reasonably calculated to provide notice, given the circumstances of the data available to Plaintiffs" (Dkt. 212, pp. 6, 7), the Court could not approve the previously-submitted notice plan without the opportunity to review the short-form notices that would be used for purposes of electronic notice. Dkt. 212, p. 8. The short-form notices are attached hereto to the Declaration of Lindsay Battles, as **Exhibit E** (Email Notice; Text Notice/Social Media Notice). The website is not yet live, but the content will exactly replicate the long-form notice, with links to the exclusion form, links to important case documents (e.g. decertification/certification decisions), and the trial date (once set).

This motion substantially mirrors Plaintiffs' previously-filed Motion for Approval of Class Notice (Dkt. 166). Since the previous motion was filed, DHS has produced additional class member identifying and contact information. Plaintiffs now have class member identifying and contact information from *both* Department of Homeland Security (DHS) and from GEO Group. Accordingly, Plaintiffs have obtained data from the available known sources and submitted it to the class administrator for comparison and skip-tracing.

By this motion, Plaintiffs request Court approval to issue class notice consistent with Federal Rule of Civil Procedure 23(c)(2)(B). As detailed below, Plaintiffs' counsel has retained a highly experienced class administrator and worked with that administrator to develop a robust, individualized notice plan designed to reach class members through multiple channels, including mail, email, and text message. The plan uses the substantial identifying and contact information produced for class members, supplemented by skip-trace research and emergency-contact outreach where appropriate. Under the

circumstances of this case, the proposed plan satisfies Rule 23(c)(2)(B)'s "best notice practicable" standard.

On August 6, 2026, Defendants moved to decertify the class based on the notice plan and other issues. The Court denied Defendants' motion to decertify the class on September 23, 2026, Dkt. 212.

## II. **Procedural Background & Plaintiffs' Efforts to Secure Class Data**

On July 31, 2025, this Court certified three Rule 23(b)(3) damages classes. Dkts. 113, 114. In addition to the 5 class representatives, there are 145 people in the three classes. All of the class members were previously held in the Adelanto detention facility; their names are known, and the majority of the class members have addresses and emergency contact information in the possession of the Defendant.

After certification, the parties continued the scheduling-order deadlines to explore the possibility of settlement. During meet-and-confer discussions, Defendant represented that discovery would need to be reopened so that class data could be exchanged to facilitate notice of certification.

Class counsel deferred notice while the parties explored settlement, as is customary where settlement may eliminate the need for separate certification notice followed by a second settlement notice. After mediation proved unsuccessful, Plaintiffs promptly sought the class data necessary to effectuate notice. On February 19, 2026, Plaintiffs' counsel contacted Defendant to confirm that Defendant would supplement their disclosures with identifying and contact information for class members, including dates of birth, A-numbers, countries of citizenship or origin, removal dates if any, last known addresses, and family or emergency-contact information, including information GEO had obtained from ICE in other cases.

Plaintiffs understood from prior meet-and-confer discussions that Defendant recognized their obligation to provide class-member information following certification. Courts have long recognized that, after a Rule 23(b)(3) class is certified, parties must

make reasonable efforts to disclose information necessary to effectuate notice. As the Fifth Circuit explained in *In re Nissan Motor Corp. Antitrust Litigation*, Rule 23(c)(2)'s reasonable-effort standard requires that, "once a 23(b)(3) action has been certified, the name and last known address of each class member known to the parties or capable of being identified from business or public records available to them must be produced." 552 F.2d 1088, 1098–99 & n.11 (5th Cir. 1977). Courts likewise recognize that, once a class has been certified, a court may direct production of documents identifying class members even without a separate discovery request. See *Finkel v. Newbridge Securities Corp.*, No. 13-80670-CIV, 2014 WL 3579695 (S.D. Fla. July 18, 2014). Defendants did not produce class data in response to Plaintiffs' February 19, 2026 request.

On March 13, 2026, in connection with the parties' stipulation to continue pretrial deadlines, Defendant filed a Final Pretrial Conference statement asserting that Plaintiffs had not provided a workable plan for class notice and stating that Defendant would consider seeking decertification. Defendant did not acknowledge that they had not yet produced the class data Plaintiffs had requested and that Plaintiffs needed to develop and implement a notice plan.

The parties addressed this issue again during the March 16, 2026 status conference. During that conference, GEO confirmed that it would provide additional available contact and identifying information necessary for class notice and agreed that discovery would be reopened for that purpose. Even after that representation, however, Defendants did not immediately produce the class data.

To avoid any possible dispute over the scope of information to be produced, Plaintiffs served new requests for production on April 24, 2026 seeking class-member identifying and contact information. Plaintiffs also issued a *Touhy* subpoena to DHS on April 27, 2026. DHS initially responded that it was reviewing records to determine what information, if any, can be produced.

On June 29, 2026, Defendant produced identifying and contact information for 145 class members. As detailed below, that production contains substantial information that can be used to effectuate notice.

On July 9, 2026, DHS responded that it had declined the *Touhy* subpoena. The Court granted Plaintiffs' motion to compel the data. Dkt. 212. DHS produced the data on September 29, 2026.

Attached to this motion is Plaintiffs' proposed draft notice. *See* Declaration of Lindsay Battles ¶2 (Exhibit A).

## III. <u>Legal Standard</u>

Rule 23(c)(2)(B) requires that, "[f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the *best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort*." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added). The Rule expressly provides that notice may be given by "United States mail, electronic means, or other appropriate means." Id.

The best practicable notice standard does not require proof that every class member actually received notice. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017); *see also Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012) (the analysis focuses on the notice plan itself rather than actual receipt by each individual class member); *LaVigne v. First Community Bancshares*, 330 F.R.D. 293 (D.N.M. 2019) ("the rule does not insist on actual notice to all class members in all cases" and "recognizes it might be impossible to identify some class members for purposes of actual notice"); *In re Prudential Ins. Co. of America Sales Practices Litigation*, 177 F.R.D. 216 (D.N.J. 1997) ("The proper inquiry is whether counsel acted reasonably in selecting means

likely to inform persons affected, not whether each class member actually received notice.”).

Rather, Rule 23 requires the best notice practicable under the circumstances, including individual notice to those class members who can be identified through reasonable effort. *Briseno*, 844 F.3d at 1128. Accordingly, the notice inquiry focuses on whether the notice plan is reasonably calculated, under the circumstances, to apprise class members of the pendency of the action and afford them an opportunity to respond. *In re Lithium Ion Batteries Antitrust Litig.*, 853 F. App’x 56, 59 (9th Cir. 2021).

What constitutes reasonable notice depends on the information available to the parties and the practical likelihood that additional efforts will produce useful contact information. Individualized notice is mandatory where individual contact can be accomplished through reasonable effort. Persons whose names and addresses are “at hand” are required to receive individualized notice by mail, not notice by publication. As *Nissan* explained,

> Taken together these cases establish the principle that the type of notice to which a member of a class is entitled *depends upon the information available to the parties about that person*.…. Obviously, the word “reasonable” cannot be ignored. In every case, *reasonableness is a function of anticipated results, costs, and amount involved*. A burdensome search through records that may prove not to contain any of the information sought clearly should not be required. On the other hand, a search, even though calculated to reveal partial information or identification, may be omitted only if its cost will exceed the anticipated benefits.

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1098–99, including FN 11. The practicability of any particular notice method – including electronic notice – must be

assessed against the actual data available to the parties, not an idealized standard. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (recognizing that email notice was "infeasible" where defendants did not have email addresses for class members).

Rule 23 does not prefer any single method of notice. The 2018 Advisory Committee Notes explain that the Rule "does not specify any particular means as preferred" and instead requires courts and counsel to focus on the "means or combination of means most likely to be effective in the case before the court." Fed. R. Civ. P. 23(c)(2)(B) advisory committee's note to 2018 amendment. The Advisory Committee further cautions that simply assuming traditional methods are best "may disregard contemporary communication realities." Id. Courts therefore routinely approve notice plans that combine mail, email, text message, publication, or other appropriate methods where those methods are reasonably tailored to the available data and the characteristics of the class.

Accordingly, the best practicable notice standard under Rule 23(c)(2)(B) is inherently flexible and context-driven — courts will approve electronic notice, publication notice, or hybrid plans in lieu of traditional first-class mail when the data necessary to generate valid mailing addresses is unavailable, disproportionately expensive to compile, or simply impractical to obtain for international class members. Courts specifically recognize that electronic notice may be more likely to reach class members than postal mail, in which case electronic notice should be pursued (to the extent electronic notice can be accomplished through reasonable effort). *See Taqueria El Primo LLC v. Illinois Farmers Insurance Co.*, 630 F.Supp.3d 1121 (D. Minn. 2022) (approving hybrid plan sending email to members for whom email addresses were available, postcards to those for whom only mailing addresses were known, and requiring the notice administrator to take reasonable steps to identify updated mailing addresses upon receiving returned mail).

These principles are especially important where class members may be difficult to reach through postal mail alone, including where class members have moved, lack stable mailing addresses, or reside outside the United States. In such circumstances, the best practicable notice may require a flexible, multi-channel approach that uses the identifying information available, conducts reasonable searches for updated contact information, and provides notice through the means most likely to reach class members under the circumstances. See Fed. R. Civ. P. 23(c)(2)(B); *Jordan v. Global Natural Resources, Inc.*, 104 F.R.D. 447 (S.D. Ohio 1984) (holding that publication of an abbreviated notice containing basic information vital to adequate notification — including absentees' privilege to exclude themselves from the action, the otherwise binding nature of the judgment, and members' rights to appear individually through separate counsel — constituted sufficient notification to unidentified foreign shareholders of a securities class action).

## IV. <u>Available Class Data</u>

### A. Data Produced by GEO

Defendant GEO's data production contains substantial identifying and contact information that can be used to issue effective notice. GEO produced detainee identifying information for 145 class members (excluding the class representatives). That information includes full names, nationalities, dates of birth, Social Security numbers where available, domestic emergency-contact names, addresses, and telephone numbers, and domestic addresses. GEO's records also indicate whether each individual understands English and, if not, the individual's primary language. In addition, the records indicate whether the individual was released in the United States or removed to another country.

This data provides a strong foundation for individualized notice because every class member can be searched by name and date of birth, and the majority of class members have at least one domestic address, domestic emergency contact, or other

identifying information that can be used to locate updated contact information. Battles Decl., ¶22.

GEO's files contain domestic addresses for 137 class members; emergency contacts for at least 111; Social Security numbers for 27; nationality and language information; and records reflecting release, removal, transfer, or continued detention. *See* Battles Decl. ¶¶ 17-20. GEO itself identifies detainee addresses for 120 class members, emergency-contact addresses for 58, and emergency-contact telephone numbers for 116. Dkt. 168, Opp. at 9–10. Although the parties categorized some fields differently, both accounts establish multiple identifying and contact leads for the overwhelming majority of the class. Of the 145 class members, 143 appear to understand English or Spanish; 1 class member speaks Mandarin (and not English); 1 appears to speak English and/or Chinese. Battles Decl. ¶19.[1] The records indicate that approximately 99 class members were released (presumably into the community in the United States), while approximately 38 were removed to other countries (including voluntary departures). There were 6 also flight transfers. Two remained detained according to the documents. *See* Battles Decl. ¶ 20.

Preliminary skip tracing yielded updated contact information for some class members. ILYM located updated addresses and telephone numbers for 63 class members and email addresses for 38. Dkt. 171-2 (Lisa Mullins Decl.) ¶ 4. Of those for whom no new address was found, 80 already had an (old) domestic address and 65 had a domestic emergency contact. Id. Only three presently lack all three forms of contact lead based on the skip-traced GEO data. Id.

[1] GEO relies on generalized statements that some names may have been entered in a different sequence and some birth dates may have been self-reported or transposed. Dkt. 168, Opp. at 13–14. But GEO identifies no class member whose information is unusable. Occasional data-entry errors are not a reason to deny notice altogether.

**B. Data Produced by DHS**

Pursuant to this Court's order (Dkt. 212), on September 29, 2026, DHS produced contact information for class members. The DHS production contains records for 135 class members. The Class Administrator use the DHS addresses as supplemental, alternative addresses for those class members for whom skip-tracing did not produce new address information.

## V. Proposed Notice Plan

Plaintiffs propose a robust notice plan reasonably calculated to reach class members and satisfy Rule 23(c)(2)(B)'s "best notice practicable" requirement.

Plaintiffs' counsel has retained IYLM, a highly experienced professional class administration company, to issue notice to the class. IYLM has substantial experience conducting investigations to obtain current contact information for class members. Battles Decl. ¶¶ 3, 4, Exhibits B, C (ILYM Qualifications; Notice Proposal).

Plaintiffs' counsel and IYLM have designed a notice plan that provides for multiple channels of direct notice, including U.S. mail, email, text message and social media outreach. That layered approach reflects Rule 23's focus on the combination of means most likely to be effective. See Fed. R. Civ. P. 23(c)(2)(B) advisory committee's note to 2018 amendment; *Taqueria El Primo LLC v. Illinois Farmers Ins. Co.*, 630 F. Supp. 3d 1121 (D. Minn. 2022). The Administrator's notice proposal is attached as Exhibit C.

***Direct Mail Notice to Class Members*:**

Before issuing notice, the Class Administrator will use skip-trace databases to locate updated mailing addresses, mobile telephone numbers, and email addresses for as many class members as possible. Skip tracing can be performed for any individual for whom a name and date of birth are available, which includes all class members here. Where Social Security numbers are also available, the research is expected to yield even stronger results.

Skip tracing is more effective than relying solely on the National Change of Address database because it draws on a broader set of public, governmental, and proprietary data sources. Whereas the National Change of Address database depends on voluntary postal address-change submissions, skip-trace databases aggregate and cross-reference records from numerous sources, including credit-reporting, public-record, governmental, and commercial databases. These resources include, among others, Experian, TransUnion, Equifax, and LexisNexis.

Using the updated contact information obtained through this process, the Administrator will issue direct notice to all class members by mail. Experience shows that some percentage of mail will be returned. Returned U.S. mail will trigger further research and re-mailing where updated information is found. Id. ¶¶ 8-16.

Notice will be provided in English and Spanish.

GEO speculates that the preliminary estimate's assumption of a 15% remailing rate may prove too low. Opp. at 17, 20. GEO provides no data for this assumption. Even if more notices are returned, Plaintiffs will fund the additional searches and remailings necessary to complete the approved plan. Battles Decl. ¶ 21; Dkt. 171-2, Lisa Mullins Decl. ¶ 9.

***<u>Electronic Direct Notice Via Email, Text Message & Direct Social Media Outreach</u>*:**

Using class member data and the results of skip-tracing, the Class Administrator will also issue direct notice via email, text message, and social media. Electronic notice is particularly important in this case because some class members may no longer reside in the United States. Email addresses and social media accounts often remain stable over time even when mailing addresses change, and mobile telephone numbers may also remain associated with an individual after relocation, particularly within the same country. Preliminary skip trace research located 38 email addresses and approximately 63 mobile numbers. Dkt. 171-2, Lisa Mullins Decl. ¶ 4.

The social media outreach includes direct contacts through Meta platforms including Facebook and Instagram for class members who have either email addresses or mobile numbers connected to Meta accounts. Where verified contact information is associated with a Meta account, ILYM will attempt direct outreach through Facebook or Instagram using approved language and reasonable verification procedures. Id. ¶ 11. Those channels are especially valuable for individuals who may have moved or left the United States.

***<u>Emergency Contacts</u>:***

The Administrator will also send notice to class members' domestic emergency contacts by direct mail and, where no mailing address is available, by text message and/or email. Of the 145 class members, 111 provided domestic emergency contact information. These contacts were supplied by class members themselves as persons through whom they could be reached. They are a sensible additional channel where a former detainee has been removed or no longer resides at the address in GEO's file. This additional step is tailored to the realities of this class, which consists of formerly detained individuals, many of whom may have moved, been deported, or otherwise become difficult to reach through ordinary address-based notice. Dkt. 171-2, Mullins Decl. ¶ 12. GEO argues that emergency-contact outreach cannot "cure" every limitation in the other data. Opp. at 18. It need not. Mail, email, text, social media, emergency contacts, community outreach, and returned-mail follow-up work cumulatively; each increases the likelihood of reaching someone another channel misses.

***<u>Website & Outreach</u>:***

ILYM will design a case website that includes the complete long-form notice. Once live, it will contain links to the exclusion form and important case documents (e.g. class certification order); it will also display important dates and deadlines including the trial date.

Finally, Plaintiffs' counsel and ILYM will also reach out to the class through groups who work with former Adelanto detainees.

## VI. Content of Notice: Proposed Notice

Rule 23(c)(2)(B) specifies that the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

A draft of Plaintiffs' proposed long-form certification notice is submitted hereto as **Exhibit A** to the Declaration of Lindsay Battles. The draft exclusion form is submitted as **Exhibit D** to the Declaration of Lindsay Battles. The draft notice satisfies the requirements of Rule 23(c)(2)(B).

Pursuant to the Court's order, drafts of the short-form notices are attached as **Exhibit E**. This includes the email notice and text/social media notice (same content). All short form notices link to the website for the complete long-form notice. The website is not attached; it will exactly reproduce the longform notice, with links to the exclusion form, important case documents (e.g. certification decision), and will display the trial date.

## VII. Conclusion

Plaintiffs request approval of their notice plan and proposed class notice. Provided court approval is granted, Plaintiffs can be prepared to issue notice by October 30, 2026.

Respectfully submitted,

Dated: October 9, 2026

UCLA LAW CLINICS
SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP
McLANE, BEDNARSKI & LITT, LLP

By: */s/ Lindsay Battles*
Catherine Sweetser
UCLA LAW CLINICS

Paul Hoffman
John Washington

Barrett S. Litt
Lindsay Battles
McLane, Bednarski & Litt, LLP

Attorneys for Plaintiffs Hugo Gonzalez, Jose Baca, Erick Lopez, Mario Manjarres and Ricardo Sandoval Guadarrama

## L.R. 11-6.2 – CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs certifies that this brief contains 3,427 words, which complies with the word limit of Local Rule 11-6.1.

DATED: October 9, 2026

McLANE, BEDNARSKI & LITT, LLP

By: */s/Lindsay Battles*
Lindsay Battles