ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
JOSEPH MCGEADY (BAR NO. 308408)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155 Fax: (619) 233-1158
E-Mail: jmcgeady@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
MATTHEW T. SESSIONS (BAR NO. 307098)
2010 Main Street, 8th Floor
Irvine, California 92614-7214
Phone: (949) 553-1313 Fax: (949) 553-8354
E-Mail: msessions@allenmatkins.com

BURKE, WILLIAMS & SORENSEN, LLP
SUSAN E. COLEMAN (BAR NO. 171832)
444 South Flower Street, Suite 2400
Los Angeles, California 90071-2953
Phone: (213) 236-0600 Fax: (213) 236-2700
E-Mail: scoleman@bwslaw.com

Attorneys for Defendant
THE GEO GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO GONZALEZ, JOSE BACA, ERICK LOPEZ, MARIO MANJARREZ, and RICARDO SANDOVAL GUADARRAMA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GEO GROUP, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-04014-JGB-ACCV<br><br>[CLASS ACTION]<br><br>Honorable Jesus G. Bernal<br><br>**DEFENDANT THE GEO GROUP, INC.'S OPPOSITION TO PLAINTIFFS' REFILED MOTION FOR APPROVAL OF CLASS NOTICE**<br><br>Date: November 9, 2026<br>Time: 9:00 a.m.<br>Dept: 1<br><br>Date Action Filed: June 10, 2022<br>Trial Date: None Set |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 5

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 6

A. June 2022: Plaintiffs file their Complaint, asserting class claims. ..... 6

B. September 2024: Plaintiffs move for class certification. ..... 6

C. February 2026: Plaintiffs belatedly commence class notice discovery. ..... 8

D. July – September 2026: Plaintiffs' initial Motion for Approval of Class Notice Plan is denied. ..... 10

III. LEGAL STANDARD ..... 12

IV. ARGUMENT ..... 14

A. The proposed notice plan is so vague as to deprive the Court of its ability to properly supervise notice. ..... 14

B. Plaintiffs' proposed notice is misleading and lacks required components. ..... 16

C. The available class information is limited and unreliable. ..... 18

D. Plaintiffs' proposed class notice plan is not reasonably practicable due to Plaintiffs' lack of diligence and effort. ..... 20

1. The results of skip tracing are speculative at best and likely insufficient to provide notice based on the lack of available information ..... 21

2. Electronic notice is also insufficient due to the lack of information ..... 22

3. Notice through emergency contacts cannot cure the present lack of information ..... 22

4. The other forms of notice suggested by Plaintiffs are insufficient and fail to cure the inadequacies above ..... 23

V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google LLC*, No. 5:17-CV-07082-BLF, 2021 WL 2073816 (N.D. Cal. Mar. 23, 2021) ....... 13

*Dillon v. Clackamas Cnty.*, No. 3:14-CV-00820-YY, 2019 WL 6709545 (D. Or. Aug. 6, 2019), *report and recommendation adopted*, 2019 WL 6709381 (D. Or. Dec. 9, 2019) ....... 5, 14

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ....... 12, 13

*Frank v. United Airlines, Inc.*, 216 F.3d 845 (9th Cir. 2000) ....... 12

*In re Gypsum Antitrust Cases*, 565 F.2d 1123 (9th Cir. 1977) ....... 16

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977) ....... 20, 21

*Lambert v. Nutraceutical Corp.*, No. EDCV1305942ABSPX, 2015 WL 12655392 (C.D. Cal. June 24, 2015) ....... 15

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....... 12

*Perez v. First Am. Title Ins. Co.*, No. CV-08-1184-PHX-DGC, 2010 WL 4824082 (D. Ariz. Nov. 22, 2010) ....... 20, 21

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) ....... 12

*Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995) ....... 16

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ....... 13, 23

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ....... 12

*Walter v. Hughes Commc'ns, Inc.*, No. 09-2136 SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011) ....... 20

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 23, Advisory Committee Note to 1966 Amendment ..................... 12

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, 2010 ............................. 13, 14, 16

Federal Judicial Center, *Manual for Complex Litigation*, Fourth Ed., § 21.3 ........................................................................ 13, 14

**Rules**

C.D. Cal. L.R. 7-3 ........................................................................ 11

Fed. R. Civ. P 23(c)(2) ........................................................................ 12

Fed. R. Civ. P. 23(c)(2)(B)(i)-(iii) ........................................................................ 17

Fed. R. Civ. P. 23(c)(2)(B)(ii)–(iii) ........................................................................ 5

Fed. Rule. Civ. P. 23(c)(2)(B) ........................................................ 12, 16, 21, 23

Fed. Rule. Civ. P. 23(c)(2)(B)(ii) ........................................................................ 17

**Regulations**

6 C.F.R. §§ 5.41–.49 ........................................................................ 9

## I. INTRODUCTION

On September 23, 2026, the Court denied Plaintiffs' Motion for Approval of Class Notice. Dkt. 212. Because Plaintiffs had not provided "any short-form drafts of the electronic notices that will be sent to the class members via e-mail, text message, or social media, or a draft of the class website," and, "[g]iven the absence of the drafts," the Court ruled that it could not "determine whether Plaintiffs' notices conform to Fed. R. Civ. P. 23(c)(2)(B)." *Id.* at 8. The Court ordered Plaintiffs to resubmit all forms of class notice. *Id.*

Plaintiffs' Refiled Motion for Approval of Class Notice does not do so. Dkt. 213. Plaintiffs now attach a short-form email notice and a combined text and social media notice, but they still do not submit the class website, which they concede "is not attached," offering instead only a vague description of what it will contain. *Id.* at 1:11-13, 12:20-23. Nor does the Refiled Motion cure the remaining gaps Defendant previously identified: the proposed notice still fails to distinguish among the three separately certified classes or to describe the claims, issues, and defenses applicable to each, as Rule 23(c)(2)(B) requires, and Plaintiffs still provide no specifics regarding the community groups they intend to contact or how those communications will be made. *See* Fed. R. Civ. P. 23(c)(2)(B)(ii)–(iii); Dkt. 168 at 19–21. Plaintiffs also fail to include a proposed timeline for notice efforts, such as any proposed opt-out deadline. The Court therefore remains unable to fairly review Plaintiffs' notice plan before it is enacted—the same deficiency that caused the Court to deny Plaintiffs' original motion. *See* Dkt. 212 at 8, 11. Absent these specifics, the Court cannot perform its duty to "scrutinize the form and content of the proposed notice, as well as the manner in which it is to be disseminated." *Dillon v. Clackamas Cnty.*, No. 3:14-CV-00820-YY, 2019 WL 6709545, at *2 (D. Or. Aug. 6, 2019), *report and recommendation adopted*, 2019 WL 6709381 (D. Or. Dec. 9, 2019) (citation omitted).

Finally, in the interest of preserving the record and because Plaintiffs' notice plan continues to suffer from these defects, Defendant respectfully reasserts, and incorporates by reference, the additional arguments raised in its Opposition to Plaintiffs' original Motion for Approval of Class Notice and in its Sur-Reply, including that the available class contact information is insufficient to accomplish reasonable notice and that Plaintiffs' plan is not reasonably practicable. Dkt. 168; Dkt. 184-2.

For these reasons, and those set forth below, the Refiled Motion should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. June 2022: Plaintiffs file their Complaint, asserting class claims.

On June 10, 2022, Plaintiffs Hugo Gonzalez, Jose Baca, Erick Lopez, Mario Manjarrez, and Ricardo Sandoval Guadarrama filed their Complaint, on behalf of themselves and all others similarly situated, alleging claims for (1) battery, (2) assault, (3) negligent hiring, training, and supervision, (4) intentional infliction of emotional distress, (5) negligence and failure to provide medical care, and (6) interference of civil rights. Plaintiffs, despite bringing this Complaint in 2022 with the intention of pursuing a class action, did not propound any discovery relating to the class members' contact information until 2026. Dkt. 168-1 at ¶ 2.

### B. September 2024: Plaintiffs move for class certification.

On September 23, 2024, Plaintiffs moved to certify a class or classes of detainees housed "in units 2D, 3B, 3C, and 3D on June 12, 2020 who were either (1) subjected to the use of pepper spray or other chemical force or other physical force that day; (2) denied or restricted from showers, eyewash facilities or medical care after that use of force; and/or (3) were placed on lockdown continually for some period of time after June 12, 2020." Dkt. 54-22.

In support of Defendant's Opposition to Plaintiffs' Motion for Class Certification, Defendant raised many issues relating to class notice. Dkt. 72 at 19:25-

20:11. The First Declaration of Donald Dutcher, submitted in support of Defendant's Opposition and served October 15, 2024, stated that it would be very difficult to find detainees once released or removed because (1) "[w]hile detainee records contain the person's stated name, these may be inaccurate," (2) "[d]ates of birth can also be inaccurate for detainees/ immigrants, as they are self-reported and birth dates in some countries are often passed down orally rather than recorded officially," (3) "[d]etainee records . . . do not include forwarding contact information such as the address to which a person is released", and (4) that "while GEO is required under its contract with ICE to maintain detainee files during the period of detention, these are the property of ICE." Dkt. 72-2, ¶¶ 3-7. Despite Defendant's openness about its lack of reliable contact information for class members, Plaintiffs continued to delay seeking any information that would facilitate class notice.

On July 31, 2025, the Court issued an order certifying three separate and distinct classes under Rule 23(b)(3):

> 1. **The 3B Class:** All immigration detainees housed in Adelanto Detention Facility, Unit 3B on June 12, 2020 who were (1) subjected to the use of area saturation with pepper balls or pepper spray and/or (2) were placed on lockdown continually for some period of time after June 12, 2020.
>
> 2. **The 3C Class:** All immigration detainees housed in Adelanto Detention Facility, Unit 3C on June 12, 2020 who were (1) subjected to the use of area saturation with pepper balls or pepper spray and/or (2) were placed on lockdown continually for some period of time after June 12, 2020.
>
> 3. **The 3D Class:** All immigration detainees housed in Adelanto Detention Facility, Unit 3D on June 12, 2020 who were (1) subjected to the use of area saturation with pepper balls or pepper spray and/or (2) were placed on lockdown continually for some period of time after June 12, 2020.

Dkt. 114. However, the Court declined to certify Plaintiffs' intentional infliction of emotional distress cause of action, stating:

> Defendants argue that Plaintiffs' IIED claim requires individualized inquiry of "whether any detainees suffered severe emotional distress as a result of outrageous conduct and, if so, which officer acted outrageously and which detainees suffered severe distress." (MCC Opp at 15.)

> Plaintiffs do not discuss their IIED claim in the MCC or MCC Reply; as such, they concede the argument. ***Plaintiffs may continue to pursue their IIED claim on an individual basis in this action.***
>
> Accordingly, the Court finds that the commonality requirement of Rule 23(a) and the predominance requirement of Rule 23(b)(3) are satisfied ***for all but one of Plaintiff's claims.***

Dkt. 113, at 31 (emphasis added).

### C. February 2026: Plaintiffs belatedly commence class notice discovery.

On February 19, 2026, Plaintiffs' counsel proposed moving the trial date then scheduled for April 14, 2026, to September or October, citing a conflicting Supreme Court oral argument. Dkt. 168-1, Ex. A at 5. At that same time, ***three and a half years*** after this case was filed, Plaintiffs' counsel wrote to confirm that "GEO will agree to provide additional, available contact/identifying information necessary for class notice" and "propose[d] that this information be disclosed as a supplemental response to previously propounded discovery requests seeking identification [of] all detainees housed in the relevant units and/or supplemental responses to Rule 26 disclosures (supplemented to provide last known address information available to ICE for each detainee)." *Id.*

Defendant's counsel responded on February 25 that it was amenable to moving the trial date, asked Plaintiffs' counsel to propose dates in September or October, and said it would respond separately regarding the class contact information. *Id*. Defendant's counsel did not receive a response and, on March 9, a week before the Final Pretrial Conference then scheduled for March 16, called Plaintiffs' counsel to ask for their proposed trial dates. Dkt. 168-2 at ¶ 2; Dkt. 168-1, Ex. A. Plaintiffs' counsel proposed dates over the phone. Dkt. 168-2 at ¶ 2. Defense counsel confirmed the next day that October 6 was agreeable and asked Plaintiffs' counsel to send a stipulation to move the trial date, as Plaintiffs' counsel agreed to do on the phone call the day before. *Id*.; Dkt. 168-1, Ex A. Defense counsel again did not receive a

response from Plaintiffs' counsel and, on March 12, sent Plaintiffs' counsel a proposed stipulation to move the trial date and supplement disclosures and responses pursuant to Rule 26. *Id.* Again receiving no response, Defense counsel followed up with Plaintiffs' counsel the next day. *Id*. On March 13, Plaintiffs' counsel signed off on the stipulation with no changes. *Id.*; Dkts. 134, 134-1.

On March 16, 2026, the parties appeared for the previously scheduled Final Pretrial Conference and discussed issues relating to class notice, including the parties' need to provide briefing on the sufficiency of class notice. Dkt. 135; Dkt. 168-1, Ex. B. The Court granted the parties' stipulation the same day. Dkt. 137.

On April 24, 2026, over a month later, Plaintiffs served their first and only request for production seeking personal identifying and contact information for detainees housed in 3B, 3C and 3D on June 12, 2020. Dkt. 168-1 at ¶ 6, Ex. A. On April 27, 2026, Plaintiffs provided notice of a subpoena addressed to the U.S. Department of Homeland Security requesting similar information. Dkt. 168-1 at ¶ 6.

Even before receiving Plaintiffs' April 24 request for production, Defendant had begun investigating what files it might possess and where they might be stored. *Id.* at ¶ 7. Defendant manually searched paper files (for detainees housed in the Facility six years prior), scanned responsive files, and contacted DHS to request approval to produce the documents. *Id.*; *see* 6 C.F.R. §§ 5.41–.49. On May 26, 2026, Defendant responded to the request for production generally agreeing to produce the information to the extent it was in Defendant's possession, custody, or control and subject to receiving approval from DHS. *See* Dkt. 168-1 at ¶ 7, Ex. C. Defendant's response also stated that DHS would likely have more reliable information. *Id.*

After meeting and conferring with Plaintiffs' counsel, Defendant reviewed hundreds of pages of paper files to redact certain personally identifying information not responsive to Plaintiffs' document request. *Id.* at ¶ 8, Ex. D. On June 29 and 30, 2026, subject to the parties' stipulation and after receiving DHS approval, Defendant

produced what contact information it was able to locate based on a reasonable inquiry and diligent search. *Id.* at ¶ 9. This included:

1. Detainee addresses for 120 of the 145 class members, excluding the named plaintiffs.
2. Emergency contact street or mailing addresses for 58 class members as of the beginning of each detention period.
3. Emergency contact phone numbers for 116 of the class members as of the beginning of each detention period.

*Id.* All of the contact information provided was based on information collected upon the detention of each class member (over six years ago), and Defendant did not have any email addresses or phone numbers for the class members to produce. *Id.* Neither party claims to possess up to date contact information for any significant portion of the class members.

### D. July – September 2026: Plaintiffs' initial Motion for Approval of Class Notice Plan is denied.

On Thursday, July 2, 2026, Plaintiffs provided Defendant with a summary class notice plan and draft notice that were substantively the same as the plan Plaintiffs initially submitted for approval. *See id.* at ¶ 10; Dkt. 166.

On Monday, July 6, 2026, the parties met and conferred on class notice and certain pretrial issues, and Defendant explained to Plaintiffs that their class notice plan was inadequate due to the lack of reliable contact information. *Id.* at ¶ 11. Defendant proposed that Plaintiffs perform their proposed skip tracing and provide Defendant (or the Court) with whatever current contact information could be located through that process. *Id*. Plaintiffs declined. *Id.*

On July 13, 2026, Plaintiffs filed their initial Motion for Approval of Class Notice Plan. Dkt. 166. As Defendant explained in its Opposition to Plaintiffs' Motion to Approve Class Notice Plan, Plaintiffs' motion failed to include key materials for the Court's review and approval, such as the short-form electronic notices proposed

to be sent to the class members via e-mail, text message, or social media, or a draft of the class website, or the details of a proposal to reach out to community groups for assistance in locating class members. *See* Dkt. 168 at 19-21.

On reply, Plaintiffs made minor revisions to their proposed notice. Dkt. 171-1, ¶¶ 2-3 & Ex. A. Plaintiffs also provided, for the first time, the preliminary results of skip-tracing efforts. Dkt. 171-2, ¶¶ 3-6. Plaintiffs reported that they had located:

- "[U]pdated mailing addresses and telephone numbers for 63 class members,"
- "[U]pdated email addresses for 38 class members," and
- "62 mobile telephone numbers among the class members researched to date that are suitable for text-message outreach."

Dkt. 171-2, ¶¶ 4-5. Because Plaintiffs included new information on reply, on August 7, 2026, Defendant filed a Sur-Reply in opposition to the class notice plan. Dkt. 184-2; *see* Dkt. 212 at 7 n.3 (granting leave to file Sur-Reply).

On September 23, 2026, the Court denied Plaintiffs' initial class notice motion and ordered Plaintiffs to refile the motion and "submit all class notice forms" for the Court's review. Dkt. 212 at 11. Plaintiffs filed the instant motion on October 9, 2026. Dkt. 213. Plaintiffs did not attempt to meet and confer regarding the changes made to the class notice plan in the instant motion. Nor did Plaintiffs send Defendant the new, short form notices Plaintiffs have proposed prior to filing this motion. Dec. of Catriona M. Lavery ("Lavery Dec.") ¶ 7; *see generally* C.D. Cal. L.R. 7-3 (requiring counsel to "thoroughly . . . discuss the substance of the contemplated motion and any potential resolution" at least seven days prior to the filing of the motion).

The Court's September 23, 2026 Order also granted Plaintiffs' motion to compel DHS's compliance with their subpoena for class member contact information. Dkt. 212 at 11. Plaintiffs' motion states that DHS produced responsive data for 135 class members on September 29, 2026. Dkt. 213 at 9:1-6. Despite multiple, earlier requests by Defendant's counsel, Plaintiffs' counsel did not share this production with Defendant until after 5:00 p.m. on October 19, 2026, the day this

Opposition is due, giving Defense counsel only limited time to analyze the data. Lavery Dec. ¶¶ 2-5.

## III. LEGAL STANDARD

Notice is a fundamental requisite of the constitutional guarantees of procedural due process, and, accordingly, the failure to give proper notice to class members violates due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); Fed. R. Civ. P. 23, Advisory Committee Note to 1966 Amendment ("This mandatory notice pursuant to subdivision (c)(2) … is designed to fulfill requirements of due process to which the class action procedure is of course subject").

Rule 23(c)(2) requires a "higher standard of notice" for a Rule 23(b)(3) damages class. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (citing *Eisen*, 417 U.S. at 173). Rule 23(c)(2) requires that "[f]or any class certified under Rule 23(b)(3) … the court *must* direct to class members the best notice that is practicable under the circumstances, *including individual notice* to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2) (emphasis added).

Accordingly, "each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action." *See Eisen*, 417 U.S. at 173, 176. Generally, the standard requires that class members be furnished with "the best notice that is practicable under the circumstances." Fed. Rule. Civ. P. 23(c)(2)(B); *see also id.* at *Eisen*, 417 U.S. at 176. Under this standard, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1046 (9th Cir.

2019) (holding notice plan inadequate where 12% of mailed notices were undeliverable and only 18.5% of class members claimed funds). Additionally, "due process requires at a minimum that an absent plaintiff be given an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Typically, the best practicable notice requires mailing notice to each individual class member's address. *See Eisen*, 417 U.S. at 173 (explaining that in a Rule 23(b)(3) case, individual or actual notice is required to all "members whose names and addresses may be ascertained through reasonable effort"). When class members' addresses are unknown—as is the case here—courts may, in certain circumstances, use alternative means, such as notice through third parties, paid advertising, and/or posting in places frequented by class members. However, this does not create a light burden for the Plaintiffs. Indeed, not every form of alternative notice is acceptable, and courts have long held that in many circumstances, alternative means such as publication, are "poor substitute[s]" for actual notice. *See id.* at 175.

The Federal Judicial Center maintains guidance and forms for class action notice. *See generally*, Federal Judicial Center, *Manual for Complex Litigation*, Fourth Ed., § 21.3 ("FJC Manual for Complex Litigation"); Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, 2010 ("FJC Class Action Notice Checklist").[1] According to the FJC,

> The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. ***It is reasonable to reach between 70–95%.*** A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%.

[1] Available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0 (last accessed October 17, 2026) and provided for ease of reference as Lavery Dec., Ex. A.

FJC Class Action Notice Checklist, at 3 (emphasis added) (cited by *AdTrader, Inc. v. Google LLC*, No. 5:17-CV-07082-BLF, 2021 WL 2073816, at *1 (N.D. Cal. Mar. 23, 2021)). The FJC also urges judges to "[w]atch out for potentially ineffective 'last known address' mailings" and confirm the effectiveness of efforts to update outdated mailing lists before approval. *Id.* ("Look for information that indicates how accurate the mailing addresses will be after the planned address updating effort.") And the FJC encourages courts to consider the percentage of the class that is likely to be reached directly by mail. *Id.* ("The parties should be able to indicate how great a percentage of the overall class will be reached by individual notice, so that the extent of any necessary additional notice can be determined.")

## IV. <u>ARGUMENT</u>

### A. The proposed notice plan is so vague as to deprive the Court of its ability to properly supervise notice.

"[U]nder Rule 23(c)(2)(B), courts must scrutinize the form and content of the proposed notice, as well as the manner in which it is to be disseminated." *Dillon*, 2019 WL 6709545, at *2 (citation omitted); *see generally*, FJC Manual for Complex Litigation, § 21.3; FJC Class Action Notice Checklist, at 4. Here, the proposed notice plan references additional materials and other forms of notice that have not been provided to the Court (or Defendant) for review or approval. This is improper. "The court cannot fulfill its duty under FRCP 23(c)(2)(B) to direct the 'best notice that is practicable,' if it has no opportunity to review the notice before it is sent to class members." *Id.* at *2. The Federal Judicial Center guidance calls for the Court to review and approve ***all forms*** of proposed class notices:

> ***Have you approved all of the forms of the notices?***
>
> Before authorizing the parties to begin disseminating notices you should ask for and approve all forms of notice that will be used. This includes a detailed notice; a summary notice; and ***information that will appear at the website and in any other form***, such as an Internet banner, TV notice, and radio notice. …. It is best to see and approve the forms of notice the way they will be disseminated….

FJC Class Action Notice Checklist, at 4 (emphasis altered).

Plaintiffs' refiled motion still omits numerous materials it proposes to create and distribute outside of the Court's (or Defendant's) view. For example, the proposed notice references a website, but Plaintiffs have not provided a mockup of the website—Plaintiffs' motion merely states that the proposed administrator "will design a case website." *See* Dkt. 213 at 11:23. The proposed notice states that "key documents" will be included on the website but the plan does not identify what those documents are. Dkt. 213-2 at 4. And Plaintiffs propose to "reach out to the class through groups who work with former Adelanto detainees," but have not provided the Court with even the *names* of these groups, let alone what Plaintiffs would propose to communicate to them about this litigation or how. Dkt. 213 at 12:1-2.

In addition, the bases for the anticipated cost presented in the proposed notice plan of $7,250.00 remain at a minimum unclear, if not plainly incorrect. The proposed administrator's written estimate appears to assume skip tracing will be performed for "up to 10%" of the class members in one place and 15% in others. Dkt. 213-4 at 1-3. Plaintiffs' own refiled plan envisions performing skip tracing for every member of the three classes, not just 10% or 15%. Dkt. 213 at 9:21-27. The proposed administrator's estimate also seems to assume attempting to contact 170 individuals, but Plaintiffs' plan proposes to contact all 145 class members as well as 111 emergency contacts. Dkt. 213-4 at 1. While Plaintiffs' counsel states they will fund additional searches and remailings as necessary to complete an approved notice plan, such vague assurances do not cure the deficit of information Plaintiffs have provided for the Court. *See* Dkt. 213-1 ¶ 21. Plaintiffs cannot unilaterally decide what is necessary to accomplish a notice plan. The reason the Court must approve the specific notice plan to be implemented is so the Court can supervise the management of the class action, including deciding what constitutes sufficient notice. *See Lambert v. Nutraceutical Corp.*, No. EDCV1305942ABSPX, 2015 WL 12655392, at *8 (C.D. Cal. June 24, 2015) ("The Court's duty is to oversee the dissemination of class

notice."). A plan that allows Plaintiffs' counsel to decide the scope of reasonable notice efforts after the fact is no plan at all.

The proposed plan also contains no proposed timeline for the Court to review. *See* FJC Class Action Notice Checklist, at 4 ("Class members need time to receive a notice by mail or in a publication" and notice plans must "allow[] for re-mailings, fulfillment of requests for more information, and consideration of rights and options."). Plaintiffs' plan includes no deadline for opt-outs, no date certain for the completion of skip tracing, and no deadline for a first round of notice attempts. The proposed notices simply include a "TBD" placeholder for the opt-out deadline. Dkt. 213-2 at 3, 6. And Plaintiffs' only included date—Plaintiffs' representation that they "can be prepared to issue notice by October 30, 2026"—is a nonstarter because the motion will not be heard until November 9. *See* Dkt. 213 at 12:25-26. Without a timeline, Plaintiffs' plan fails to ensure that class members receive the opportunity to opt out well in advance of trial. *See Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) ("The purpose of Rule 23(c)(2) is to ensure that the plaintiff class receives notice of the action well before the merits of the case are adjudicated").[2]

### B. Plaintiffs' proposed notice is misleading and lacks required components.

In order to satisfy Rule 23, "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. Rule. Civ. P. 23(c)(2)(B). "The purpose of this notice requirement . . . is to present a fair recital of the subject matter of the suit

[2] As of the time of this filing, no trial date is set. The parties have jointly requested a trial date of May 11, 2027. Dkt. 214.

and to inform all class members of their opportunity to be heard." *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir. 1977). Plaintiffs do not attempt to explain how the proposed long-form notice complies with Rule 23. *See* Dkt. 213 at 12:3-23. In truth, Plaintiffs' notice does not satisfy Rule 23(c)(2)(B) for at least three reasons.

*First*, the notice does not accurately state the class claims and defenses raised or issues to be tried. Indeed, the notice fails to describe GEO's defenses at all, and merely states that "The GEO Group denies they did anything wrong." Dkt. 213-2 at 4. Defendant asserts numerous affirmative defenses that have not been included. A proposed notice that fails to accurately describe the claims and defenses at issue does not provide class members with fair notice and should not be approved. *See* Fed. Rule. Civ. P. 23(c)(2)(B)(ii). The same issues are present in Plaintiffs' proposed short form notices. *See* Dkt. 213-6.

*Second*, the notice is not tailored to each individual class—it provides one single notice to all three of the classes' members. *See* Dkt. 213-2 at 3. It also erroneously refers to the three classes as "the class" and combines the classes' definitions into a single description. *Id.* And while the refiled notice states that there are three classes, one for each housing unit, the combination of class definitions is still likely to confuse class members as to (1) the nature of the action, and (2) what issues apply to each separate class, including what the specific claims, issues, or defenses are as it relates to each individual receiving the notice. Fed. R. Civ. P. 23(c)(2)(B)(i)-(iii). The notice's use of "and/or" in the class notice is also confusing as it does not explain whether a recipient must have been *both* "subjected to the use of area saturation with pepper balls or pepper spray on June 12, 2020" *and* "placed on lockdown continually for some period of time after June 12, 2020" to be a class member or if only one condition need be satisfied. *See* Dkt. 213-2 at 3. Again, the same issues are present in Plaintiffs' proposed short form notices. *See* Dkt. 213-6. The class notice also does not accurately define the class in all instances as it uses

"after June 2, 2020" as the relevant lockdown period in one place but uses "after June 12, 2020" in another. *See* Dkt. 213-2 at 3 (compare "Why did I get this notice?" with "Who is in the classes?").

*Third*, the proposed notice is confusing in that it provides no instructions for accessing up-to-date case information beyond directing class members to "consult the online docket." Dkt. 213-2 at 5.

**C. The available class information is limited and unreliable.**

The class information available to Plaintiffs remains insufficient to provide reasonable notice to the absentee class members.

*First*, the available information regarding the names and dates of birth of each class member is inherently unreliable absent external verification. According to Donald Dutcher, Defendant's Assistant Facility Administrator and Chief of Security in June 2020, "many persons of Mexican or Central American descent use their mother's maiden name in addition to their father's name, such as Carlos Alberto Alvarez Garjeda." Dkt. 72-2 at ¶ 4. U.S. officials may have these names in the wrong sequence or rely on what they are told by the detainee, which may or may not use the same naming order or convention as the United States." *Id*. Additionally, "[d]ates of birth can also be inaccurate for detainees/ immigrants, as they are self-reported and birth dates in some countries are often passed down orally rather than recorded officially." *Id.* at ¶ 5. And "[o]nce immigrants enter the U.S., particularly if there is a language barrier, they may be entered in the 'wrong' order (*i.e*. day before month), list the same day/month as the date of their entry into the country, or simply be made up." *Id.* Thus, without external verification of each of the class members names and dates of birth, this information cannot be relied upon to provide reasonable notice to each member.

*Second*, the only available contact information for these individuals, which Defendant provided to Plaintiffs based on a reasonable inquiry and diligent search, is as follows:

1. Detainee addresses for 120 of the 145 class members, excluding the named plaintiffs. This information was collected at the beginning of each detention period, or earlier, and therefore is over six years old in all instances.
2. Emergency contacts' street or mailing addresses for 58 class members as of the beginning of each detention period.
3. Emergency contacts' phone numbers for 116 of the class members as of the beginning of each detention period.

Dkt. 168-1 at ¶ 9.

Plaintiffs' refiled motion fails to account for the age of the information, the value of which has been greatly diminished due to Plaintiffs' waiting nearly four years to conduct any class notice discovery. And while the class administrator conducted skip tracing research on ***all*** 145 class members using the information in Defendant's production, it was ***only*** able to locate updated mailing addresses and telephone numbers for 63 class members and updated email addresses for 38 class members. Dkt. 213 at 8:17-22; Dkt. 171-2 at ¶¶ 3-4. Plaintiffs have now had nearly four months to conduct skip tracing based on the information provided by Defendant, but have located updated mailing addresses and mobile phone numbers for less than half of class members and email addresses for only approximately 25% of class members.

Plaintiffs also do not explain whether there is any overlap between class members for whom they found mailing addresses, mobile numbers, and/or email addresses and do not identify specific class members for whom they now have certain updated information. And there is no way for the Court or Defendant to assess the accuracy of these numbers from what Plaintiffs have provided. Nor have Plaintiffs provided any distinction between the "preliminary" skip tracing that has already been conducted and the skip tracing that is proposed to take place as part of Plaintiffs' class notice plan.

Plaintiffs' refiled motion also states that DHS has now provided "records for

135 class members" in response to Plaintiffs' subpoena, but Plaintiffs do not identify what these records contain, such as what form of contact information was provided or the age of such information. *See* Dkt. 213 at 9:1-6. The DHS data reflects that 59 of the 135 class members referenced have been "removed." Lavery Dec. ¶ 6. The DHS production includes last known addresses for at most 128 class members—of these, two are international addresses, 126 are domestic addresses, and several list only a detention facility addresses. *Id.* This information therefore cannot support Plaintiffs' refiled class notice plan, which should be denied as inadequate due to lack of reliable contact information.

**D. Plaintiffs' proposed class notice plan is not reasonably practicable due to Plaintiffs' lack of diligence and effort.**

Diligence in class plaintiffs' efforts to locate or identify class members is relevant to whether plaintiffs have made the "reasonable effort" required by Rule 23(c)(2)(B). Here, Plaintiffs' efforts have not been reasonable, as compared to the case law.

For example, in *Perez v. First Am. Title Ins. Co.*, No. CV-08-1184-PHX-DGC, 2010 WL 4824082, at *3 (D. Ariz. Nov. 22, 2010), the court partially decertified a class because plaintiffs had "not acted with reasonable diligence in discovering the identities of members of the class." There, the plaintiffs acknowledged they needed to review certain files to identify class members, had over a year to conduct this discovery, but ultimately failed to "do the work necessary." *Id.* at *1-2. And while some records in that matter were incomplete, the court explained "that [did] not relieve Plaintiffs of their obligation to review the files that [were] available." *Id.* at *2; *see also Walter v. Hughes Commc'ns, Inc.*, No. 09-2136 SC, 2011 WL 2650711, at *16 (N.D. Cal. July 6, 2011) (denying approval of class notice plan, stating "[i]t appears as though very little effort was expended by the parties to ensure the largest possible number of class members received notice").

Similarly, in *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1099

(5th Cir. 1977), the parties agreed on the best available source of information for class notice under Rule 23(c)(2)(B), but the plaintiff failed to undertake the effort to gather that information. The Fifth Circuit determined that "[w]hile the search [could not] be made with push-button ease, its advantages bring the effort required within the range of reasonableness." *Id.* at 1099. As a result, the Fifth Circuit vacated the order approving class notice. *Id.* at 1100.

Here, Plaintiffs admit that the classes "consist[] of formerly detained individuals, many of whom may have moved, been deported, or otherwise become difficult to reach through ordinary address-based notice." Dkt. 213 at 11:14-17. Despite this, Plaintiffs waited until February 2026 to request class contact information from Defendant and did not subpoena the Department of Homeland Security for its records until April 2026. Dkt. 168-1 at ¶ 6 & Ex. A. Knowing that the information Defendant possessed would be unreliable and incomplete, Plaintiffs should have initiated class notice efforts sooner. And the failure to do so has contributed to the present lack of sufficient information to effectuate notice to the classes. Plaintiffs' proposed class notice plan only speculates that it will resolve these insufficiencies, without specifics, and incorporates additional means of locating class contact information that could have been attempted years ago.

**1. The results of skip tracing are speculative at best and likely insufficient to provide notice based on the lack of available information.**

Even after conducting preliminary skip tracing, Plaintiffs' class notice plan still concedes that updated contact information is required for each of the classes. Indeed, the first step of the refiled proposal is to have the Class Administrator "use skip-trace databases to locate updated mailing addresses, mobile telephone numbers, and email addresses for as many class members as possible." Dkt. 213 at 9:22-24. By including this step, Plaintiffs admit that using the information that is currently available still would *not* be "the best notice that is practicable under the

circumstances." Fed. Rule. Civ. P. 23(c)(2)(B). And even assuming this continued skip tracing process is a "reasonable effort," it has been available for Plaintiffs to obtain throughout this entire litigation, which has been pending for more than four years. *See, e.g.*, *Nissan Motor Corp.*, 552 F.2d at 1099; *see also, e.g.*, *Perez*, 2010 WL 4824082, at *2-3.

Additionally, the results of Plaintiffs' proposed skip tracing are uncertain, and Plaintiffs do not explain how this process will generate different results from the preliminary skip tracing that the class administrator has already completed. Plaintiffs' vague and unsupported assertions on the effectiveness of skip tracing remain insufficient for the Court to perform its supervisory function.

Plaintiffs' speculation is compounded by the unreliability of the available data, as discussed above, and the risk of the search returning multiple duplicative hits for individuals with the same names.[3] Given these limitations, the "Key Assumptions" in the class notice proposal, which estimates the percentage of "remails" to be only 15%, grossly underestimate the difficulties posed by utilizing this skip tracing method at this point in the litigation for this population. Dkt. 213-4 at 1-2.

**2. Electronic notice is also insufficient due to the lack of information.**

Plaintiffs also claim that "[e]lectronic notice is particularly important in this case because some class members may no longer reside in the United States." Dkt. 213 at 10:20-22. Plaintiffs thus propose to provide notice by electronic means, including through email, text message, and social media outreach. *Id.* at 10:18-26. But these methods suffer from the same lack of information as traditional mail notice. Indeed, Plaintiffs only claim to be aware of 38 email addresses and 63 phone numbers

[3] Plaintiffs state that they will use social security numbers to bolster skip tracing data, but social security numbers are only available for 27 class members and it is unclear from Plaintiffs' proposed plan how the numbers would be used in these circumstances. Furthermore, given the nature of the immigration statuses of civil immigration detainees, it may be the reality that the 27 Social Security numbers are fabricated or invalid.

(without stating whether any of these overlap for any individuals) for a class consisting of 145 members. Dkt. 171-2 ¶¶ 4–5.

**3. Notice through emergency contacts cannot cure the present lack of information.**

Plaintiffs concede that seeking notice through some of the detainees' emergency contacts as an additional step is "tailored to the realities of this class," given the likely international movement of the class members and their lack of contact information. Dkt. 213 at 11:14-17. However, only 111 of the 145 class members have emergency contact information and it is all over six years old. Plaintiffs offer no evidence that any emergency contact remains current or in touch with a class member. As a result, the parties are left with insufficient data to effectuate class notice.

**4. The other forms of notice suggested by Plaintiffs are insufficient and fail to cure the inadequacies above.**

Plaintiffs include two additional forms of notice in their proposal, which are insufficient to provide notice on their own and fail to cure any of the inadequacies addressed above. First, Plaintiffs claim that their counsel and class administrator will "reach out to the class through groups who work with former Adelanto detainees." Dkt. 213 at 12:1-2. This refiled proposal still lacks any specificity whatsoever. It does not identify what these "groups" are, whether they work with any of the class members, or how Plaintiffs intend to reach out to them.

Second, Plaintiffs state that the class administrator will "also design a case website that includes the complete long-form notice." *Id.* at 11:23. But this will only provide information to individuals who are able to be reached by other means of notice, which are inadequate as explained above. Plaintiffs do not propose any methods of marketing the website, nor do they provide a proposed website for the Court's review. To the contrary, Plaintiffs admit—even at the time of their refiled motion—that the "website is not yet live" and provide no sample or proposed

website. *Id.* at 1:11-13. Plaintiffs apparently still have yet to design the website, stating "ILYM ***will*** design a case website," meaning the Court and Defendant *still* lack the information necessary to assess this part of Plaintiffs' plan. *Id.* at 11:23.

Given the lack of reliable identifying information, and Plaintiffs' lack of diligence in discovering viable contact data, a significant portion of the class would not receive the reasonable notice necessary to opt out of this litigation if Plaintiffs' class notice plan is approved. The plan would therefore impair the class members' rights in a manner incongruous with Rule 23 and should be denied. Fed. Rule. Civ. P. 23(c)(2)(B); *see also Silber*, 18 F.3d at 1454.

## V. CONCLUSION

Based on the foregoing considerations, Defendant respectfully requests that the Court deny approval of Plaintiffs' proposed class notice plan.

Dated: October 19, 2026

Respectfully submitted,

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By: */s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Defendant
THE GEO GROUP, INC.

**CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)**

Consistent with L.R. 11-6.1 and 11-6.2, the undersigned counsel certifies that this brief complies with the 25-page limit set by court order dated July 1, 2022.

Dated: October 19, 2026

Respectfully submitted,

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By: */s/ Matthew T. Sessions*
MATTHEW T. SESSIONS
Attorneys for Defendant
THE GEO GROUP, INC.