Catherine Sweetser (SBN 271142)
**UCLA LAW CLINICS**
385 Charles E Young Drive
East Los Angeles, CA 90095
Email(s): csweetser@sshhzlaw.com

Paul Hoffman (SBN 071244)
John Washington (SBN 315991)
**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP**
200 Pier Avenue, #226
Hermosa Beach, CA 90245
Telephone: (310) 396-0731
Email(s): hoffpaul@aol.com
jwashington@sshhzlaw.com

Barrett S. Litt (SBN 45527)
Lindsay Battles (SBN 262862)
**McLANE, BEDNARSKI & LITT, LLP**
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Email(s): blitt@mbllegal.com
lbattles@mbllegal.com

*Attorneys for Plaintiffs, Hugo Gonzalez, Jose Baca, Erick Lopez, Mario Manjarrez, and Ricardo Sandoval Guadarrama*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

HUGO GONZALEZ, JOSE BACA, ERICK LOPEZ, MARIO MANJARREZ, and RICARDO SANDOVAL GUADARRAMA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

The GEO Group, Inc., et al,

Defendant.

CASE NO. 2:22-cv-04014-JGB-ACCV

**PLAINTIFFS' REPLY REGARDING PLAINTIFFS' REFILED MOTION FOR APPROVAL OF CLASS NOTICE**

**[Filed concurrently with Supp. Declaration of Lindsay Battles, Exs.]**

**Date: November 9, 2026**
**Time: 9:00 a.m.**
**Ctrm: 1, Riverside**

# TABLE OF CONTENTS


I. Introduction ..... 1
II. Argument ..... 3
A. The Proposed Plan Provides the Best Notice Practicable ..... 3
B. The Layered Notice Plan Is Reasonably Calculated to Reach This Particular Class ..... 3
C. GEO's Imperfect Records Do Not Preclude Notice ..... 5
D. GEO Improperly Demands Results Before Approval ..... 7
E. Perfection Cannot Be The Enemy Of Practicable Notice ..... 8
F. The Notice Satisfies Rule 23(c)(2)(B) ..... 9
G. The Notice Plan Is Timely ..... 10
III. Conclusion ..... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Nissan Motor Corp. Antitrust Litigation*
552 F.2d 1088 (5th Cir. 1977) ....................5

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ....................3

*Gessele v. Jack in the Box Inc.*,
174 F.4th 1108 (9th Cir. 2026) ....................5, 7

*In re Lithium Ion Batteries Antitrust Litig.*,
853 F. App'x 56 (9th Cir. 2021) ....................3

*Perez v. First American Title Insurance Co.*,
2010 WL 4824082 (D. Ariz. Nov. 22, 2010) ....................7

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ....................3, 8, 9

*Walter v. Hughes Communications, Inc.*,
2011 WL 2650711 (N.D. Cal. July 6, 2011) ....................8

**Rules**

Fed. R. Civ. P. 23 ....................4, 7, 8, 9
Fed. R. Civ. P. 23(b)(3) ....................8
Fed. R. Civ. P. 23(c)(2)(B) ....................3, 9

# MEMORANDUM

## I. Introduction

GEO asserts two administrative objections in opposing Plaintiffs' re-filed motion for approval of class notice. First, GEO complains that the notices did not list a specific exclusion deadline, but instead contained a placeholder date. Plaintiffs used a placeholder because the trial date was vacated and no new date had been set. (The parties filed their joint stipulation requesting a May 11, 2027 trial date on October 9, the same day the refiled motion was submitted. See Dkt. 214.) The Court has now set trial for May 11, 2027, with the Final Pretrial Conference scheduled for April 26, 2027. Dkt. 216.[1] Plaintiffs therefore propose April 26, 2027, as the exclusion deadline to provide class members with the maximum time to exercise opt-out rights before trial commences.[2]

Second, GEO complains that Plaintiffs described, rather than launched, the class website before obtaining approval of the notice that the website would contain. Plaintiffs described the website as the complete long-form notice, with the trial date and links to documents. Plaintiffs saw little reason to incur the expense of launching a case website before the Court set the trial date and approved the notice itself. In any event, the issue is moot because the website has been created. As previously explained, the website reproduces the information contained in the long-form notice, together with links to the

---

[1] After the Court denied decertification, and found that the notice plan is reasonably calculated to reach class members, Plaintiffs considered whether the parties would prefer one final mediation before certification notice issued, to avoid the possibility of two notices. GEO has made clear in its opposition that it wants notice to issue promptly, and Plaintiffs are prepared to do so. Plaintiffs will issue notice within 30 days of the Court's order approving notice.

[2] ILYM reports all opt-outs to the parties within 5 days of receipt. Dkt. 213-3, p. 4. Plaintiffs can submit a preliminary list of exclusions before the pretrial conference and a final list of exclusions within 5 days of the deadline. Should the Court prefer a different deadline, Plaintiffs will conform the notices to any date the Court sets.

exclusion form and material case documents. The mockup website can be viewed at: https://thegeogroupclassactionlawsuit.com/. Because this is a password protected site, Plaintiffs provide screen shots; the login credentials can be provided to chambers at the Court's request. Supp. Declaration of Lindsay Battles, ¶ 5, Exhibit 3.

Plaintiffs submit with this Reply a corrected long-form notice inserting the April 26, 2027 exclusion deadline and May 11, 2027 trial date and correcting the inadvertent reference to "June 2, 2020" to "June 12, 2020." Supp. Declaration of Lindsay Battles, ¶ 2, Exhibit 1. To eliminate any possible dispute concerning GEO's position, the corrected notice also states in plain language that GEO denies wrongdoing *and* contends that "its actions were reasonable, necessary for facility safety and security, and consistent with applicable policies." (This language was inadvertently omitted from the draft notice submitted with the re-filed motion; the same language was included in the draft notice Plaintiffs submitted with their reply in support of their original motion for approval of class notice.) Plaintiffs also provide revised versions of the short form notices, which include the exclusion deadline and GEO's contentions as stated above. Supp. Declaration of Lindsay Battles, ¶ 4 , Exhibit 2.

The remainder of the Opposition repackages GEO's prior objections to the adequacy of GEO's contact data and notice methodology. The Court has already rejected the premise of those arguments. In its September 23, 2026 Order, the Court concluded that Plaintiffs had demonstrated that their proposed means of notice are "reasonably calculated to provide notice, given the circumstances of the data available to Plaintiffs." Dkt. 212 at 6–7. The Court nevertheless declined to approve the notice plan because Plaintiffs had not submitted the short-form notices that would be used for email, text-message, and social-media notice, and therefore directed Plaintiffs to refile the motion with all forms of class notice. Id. at 8, 11. Plaintiffs did exactly that. See Dkt. 213-6.[3]

[3] Defendant objects that Plaintiffs did not meet-and-confer regarding changes to the notice plan. Dkt. 215, Opp. at 11. There are no changes whatsoever to the methodology

## II. Argument

### A. The Proposed Plan Provides the Best Notice Practicable

Rule 23 does not require proof that every class member will actually receive notice. It requires "the best notice that is practicable under the circumstances," including individual notice to members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). See *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). The inquiry therefore concerns whether the notice plan is reasonably calculated, under the circumstances, to reach class members—not whether Plaintiffs can guarantee successful delivery to every person before the plan has even been implemented. See *In re Lithium Ion Batteries Antitrust Litig.*, 853 F. App'x 56, 59 (9th Cir. 2021).

In denying GEO's motion to decertify, the Court concluded that Plaintiffs' proposed means are "reasonably calculated to provide notice, given the circumstances of the data available to Plaintiffs." Dkt. 212 at 6–7. Nothing in GEO's present Opposition warrants revisiting that determination.

### B. The Layered Notice Plan Is Reasonably Calculated to Reach This Particular Class

Plaintiffs have retained ILYM, an experienced professional class administrator, to implement a notice program using several complementary channels.

ILYM will use professional skip-trace databases to update the available identifying and contact information produced by GEO and DHS.[4] These searches can

of the notice plan since the parties' July 6, 2026 conference (*See* Dkt. 213-1, ¶15). As directed by the Court, Plaintiffs have refiled with the short-form notices. GEO also complains that they did not promptly receive DHS data following the order to compel. GEO first requested DHS data on 10/16; Plaintiffs' Counsel forwarded it on 10/19 (after 5:00 p.m.). Plaintiffs' counsel is aware of no "multiple, earlier requests" for this data. Supp. Declaration of Lindsay Battles, ¶ 7.

[4] See Dkt. 171-2, Lisa Mullins Declaration, ¶¶ 2-5.

identify updated mailing addresses, telephone numbers, and email addresses. It will mail notice to each class member at the best available address. Returned mail will result in additional research and remailing where updated information can be located.[5]

ILYM will also use email and text-message notice wherever viable contact information exists. Where verified identifying information corresponds with social-media accounts, it will attempt direct electronic outreach. And where appropriate, ILYM will use the domestic emergency contacts that class members themselves supplied as persons through whom they could be reached.[6]

These methods work cumulatively. Mail may reach a person whose telephone number is obsolete; an email account may remain active after a person has moved or been removed from the United States; an emergency contact may be able to reach someone whose former domestic address is no longer useful. The 2018 advisory committee note directs courts and counsel to "focus on the means or combination of means most likely to be effective in the case before the court." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

GEO repeatedly observes that no single one of these methods will necessarily reach every class member. That is true and beside the point. Rule 23 requires the best practicable notice, not a guarantee of universal receipt. The Ninth Circuit recently reaffirmed that "[n]either Rule 23 nor the Due Process Clause requires actual notice to

---

[5] Researching addresses for undeliverable mail is separate from up-front skip tracing of all class members before notice is sent. See Dkt. 171-2, Lisa Mullins Declaration, ¶¶ 8-9.

[6] GEO argues that the bases for the anticipated proposal cost does not reflect the full amount of work to be performed. (Dkt. 215, p. 15). The administrator has confirmed that they will issue notice to all class members (145) and their emergency contacts. Dkt. 171-2, ¶¶ 8, 12. If any mail is returned as undeliverable, the administrator will research addresses and remail. *Id.* ¶¶ 8-9. If the undeliverable mail percentage is higher than anticipated, Plaintiffs' counsel will fund additional searches and remailing. Dkt. 213-1, ¶ 21.

each individual class member," and upheld the inclusion of class members whose mailed notices were undeliverable where the defendant identified no better practicable means of reaching them. *See Gessele v. Jack in the Box Inc.*, 174 F.4th 1108, 1128 (9th Cir. 2026) (amended opinion).

**C. GEO's Imperfect Records Do Not Preclude Notice**

GEO again emphasizes that some of the underlying information is several years old and speculates that GEO's recordkeeping practices may have resulted in errors. This argument misses the mark for several reasons. First, GEO relies on generalized statements that some names may have been entered in a different sequence and some birth dates may have been self-reported or transposed. Dkt. 215, Opp. at 18. But GEO identifies no class member whose information is unusable. Occasional data-entry errors are not a reason to deny notice altogether. Dkt. 171-2, Lisa Mullins Decl. ¶¶ 2-7.

More importantly, the best practicable notice standard requires reasonable effort given the available information, not infallible records. *In re Nissan Motor Corp. Antitrust Litigation* explains that a search may be required even when it cannot be performed with "push-button ease," so long as its anticipated benefit justifies the effort. 552 F.2d 1088, 1098–99 (5th Cir. 1977). Here, the class is small, every member is identified, the administrator has multiple data points, and Plaintiffs will bear the reasonable cost of researching and contacting every member. GEO cannot turn imperfections in its own recordkeeping into a veto over notice.

The available records produced by GEO are not perfect, but they contain a more than sufficient foundation to issue effective notice. Every absent class member is identified by name and date of birth. GEO's records contain domestic addresses for the overwhelming majority of the class, emergency contacts for at least 111 members, Social Security numbers for some members, nationality and language information, and information concerning release or removal. Preliminary skip tracing already located updated addresses and telephone numbers for 63 class members and email addresses for

38. Dkt. 171-2 ¶ 4. Of those for whom a new address was not found through the preliminary research, many already had a domestic address or emergency contact. Id. Since Plaintiffs' original motion, DHS has also produced records for 135 class members. Dkt. 213 at 9. Those records provide an additional source of address information to compare against the GEO data and skip-trace results.

Moreover, to the extent that GEO data contained errors in names or birthdates due to imperfect recordkeeping (e.g., transposing last and middle names for individuals with more than one last name), DHS has provided a second dataset, compiled by a different agency concerning the same population of detainees, that can be used to confirm names and birthdates.

Plaintiffs recognize that GEO and DHS data is several years old. As this Court recognized, Plaintiffs have never proposed simply mailing notices to six-year-old addresses and hoping for the best. Dkt. 212, p. 6. The entire purpose of the proposed plan is to use the identifying information to locate the best available information through professional skip tracing and then to employ multiple channels of communication.

GEO contends that better-quality contact information could somehow have been generated had Plaintiffs earlier requested class data from GEO. This argument reflects a fundamental misunderstanding of how skip-tracing works. In issuing notice, the best available contact information *is the most up-to-date* contact information. GEO and DHS each produced the most recent contact information class members had provided to them. GEO does not contend that its records contain any more current information. (The class data GEO produced in 2026 was the most up-to-date information available to it and is presumably identical to the data GEO would have produced in August 2025 immediately after class certification was granted, see Dkt. 113, dated 7/31/25.)

For anyone who has moved since providing information to GEO/DHS, the best available contact information is contact information that can be obtained through skip-tracing. The best skip-trace results are always the most recent skip-trace results, not

skip-trace results performed many months or years ago. Accordingly, even if the class data had been produced years ago, and skip traced at that time, those results would be quite stale by now and would need to be skip-traced again for more current results.

The July 2026 skip-trace results are "preliminary" because it is always understood that skip-trace results should be reasonably up-to-date before notice issues. In this case, the July contact information will be compared to the DHS production, skip-traced, and updated again before notice issues.

**D. GEO Improperly Demands Results Before Approval**

GEO identifies no reasonably available method that Plaintiffs have omitted. It simply insists that because no method promises perfection, none should be used. That is not the Rule 23 standard. *See Gessele*, 174 F.4th at 1128 (holding that the "best notice practicable" requirement did not mandate exclusion of class members whose mailed notices were returned as undeliverable, where the defendant had not identified any other reasonable step—such as a social media strategy or email outreach—that the district court could have taken to reach those class members).

Defendant argues that notice should not proceed because Plaintiffs have not already determined the results of their methodology, repeatedly faulting Plaintiffs for not completing skip tracing, electronic research, and emergency-contact outreach before seeking approval. Opp. at 19-23. This argument misses the mark for two reasons. First, Rule 23's "best practicable" focuses on the best practical methodology of the notice plan, not on the percentage of class members who actually receive notice. Second, GEO's critique reverses the proper sequence. GEO's sequence would require Plaintiffs to substantially execute a notice program—including sensitive third-party outreach—before obtaining judicial authorization.

GEO's cases do not support that result. *Perez v. First American Title Insurance Co.* involved plaintiffs who failed to review available files necessary to identify class members. No. CV-08-1184-PHX-DGC, 2010 WL 4824082, at *1–3 (D. Ariz. Nov. 22,

2010). *Walter v. Hughes Communications, Inc.* involved very little effort to maximize notice. No. 09-2136 SC, 2011 WL 2650711, at *16 (N.D. Cal. July 6, 2011). Here, every member is identified, preliminary searches have generated substantial new information, and the plan requires research and outreach for all 145. Plaintiffs are not asking to omit reasonable work; they seek authorization to perform it.

Nor does the Federal Judicial Center's discussion of anticipated reach establish a preapproval numerical threshold. The checklist is practical guidance, not a replacement for Rule 23's text. The Court can evaluate this concrete process now and require implementation reporting afterward. It need not demand a guaranteed outcome before allowing the process to begin.

GEO's criticism of the preliminary estimate is misplaced. ILYM confirms that it will carry out the complete plan, including skip tracing for all 145 members, electronic and social-media outreach where available, emergency-contact outreach, returned-mail follow-up, remailing, and reporting. Dkt. 171-2, Lisa Mullins Decl. ¶¶ 8-16. Plaintiffs will pay reasonable additional costs if actual follow-up exceeds preliminary budgeting assumptions. Dkt. 213-1, Battles Decl. ¶ 21.

**E. Perfection Cannot Be The Enemy Of Practicable Notice**

Absent class members are entitled not to perfect notice, but to the "best notice practicable." *See Silber*, 18 F.3d at 1454 (actual notice not required under Rule 23(b)(3)). GEO's argument loses sight of the practical stakes. Notice protects absent class members by giving them information and a meaningful opportunity to decide whether to remain in the case. Denying notice because some members may prove difficult to reach would not protect them. It would leave them without notice and, as a practical matter, without any realistic means of pursuing their claims.

GEO's position also conflicts with the Court's certification ruling. GEO previously argued that class members' vulnerable circumstances, residence in different states or countries, and possible lack of lawful status weighed against class treatment.

Dkt. 113 at 32–33. The Court held that "the fact that putative class members may otherwise be unable to bring their claims due to their tenuous situations only militates in favor of certification." Id. at 33. It also recognized that immigrant detainees may have limited English proficiency, limited resources, and residences throughout the world, making individual litigation unlikely. Id.

Those findings govern the practical context here. The same dispersal and vulnerability that make individual litigation unrealistic make multi-channel notice necessary. GEO cannot use those characteristics first to oppose certification and then, after losing, to block notice to the certified classes. Nor can it demand a degree of certainty no administrator could guarantee for a dispersed population.

Perfection cannot be the enemy of the good where the consequence of inaction is effectively no adjudication at all. Some mail may be returned, some electronic accounts may be inactive, and a small number of class members may remain unreachable despite reasonable effort. Rule 23 anticipates that possibility. *Silber*, 18 F.3d at 1453–54. It requires serious, tailored efforts—not an impossible assurance that every person will be found.

**F. The Notice Satisfies Rule 23(c)(2)(B)**

GEO separately renews objections to the content of the notice. The notice states the nature of the action, the class definitions, the class claims and GEO's position, the right to appear through counsel, the right and method to request exclusion and the deadline, and the binding effect of a class judgment. Supp. Battles Decl., ¶ 2, Exhibit 1. It omits the intentional infliction of emotional distress (IIED) claim, which was not certified. Dkt. 113 at 31.

GEO also objects that one notice covers all three classes. Opp. at 17. The three class definitions differ only by housing unit. Each concerns the same incident, theories, claims, defendant, and procedural rights. Dkt. 113 at 33. The notice identifies the 3B,

3C, and 3D Classes separately; it does not need to repeat the definition for each. A single accurate notice is clearer than three near-identical ones.

**G. The Notice Plan Is Timely**

GEO's accusation of delay (Opp. at 8–11, 20–21) is wrong, and the Court did not adopt it. Dkt. 212 at 6–7. After certification, the parties continued deadlines to pursue settlement. Deferring certification notice during settlement efforts is customary and avoids duplicative notices. Dkt. 213-1 ¶¶ 7–8. The mediator GEO proposed was not available until February 5, 2026. Dkt. 171-1 ¶ 5. When mediation failed, Plaintiffs requested class identifying and contact data on February 19. Dkt. 213-1 ¶ 9. GEO did not produce it. *Id.* At the March 16 conference, GEO confirmed it would provide the data and agreed to reopen discovery. *Id.* ¶ 11. When production still did not come, Plaintiffs served formal requests on April 24 and a *Touhy* subpoena on DHS on April 27. *Id.* ¶ 12. GEO produced the 145 files on June 29–30, more than four months after the request. *Id.* ¶ 13. Plaintiffs then retained ILYM, developed the plan, met and conferred on July 6, and filed on July 13. When DHS refused the subpoena, Plaintiffs moved to compel and prevailed. Dkt. 212 at 11.

## III. <u>Conclusion</u>

The Court has already concluded that Plaintiffs' proposed means are reasonably calculated to provide notice given the circumstances and available data. Plaintiffs have now provided the short-form electronic notices the Court requested. They have also supplied a date-certain exclusion deadline, the newly established trial date, and a class website.

Plaintiffs respectfully request that the Court approve the proposed class notice and notice plan and authorize ILYM to commence dissemination.

Plaintiffs will issue notice within 30 days of the Court's order approving the notice.

Dated: October 26, 2026

UCLA LAW CLINICS
SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP
McLANE, BEDNARSKI & LITT, LLP

By: */s/ Lindsay Battles*

Catherine Sweetser
UCLA LAW CLINICS

Paul Hoffman
John Washington

Barrett S. Litt
Lindsay Battles
McLane, Bednarski & Litt, LLP

Attorneys for Plaintiffs Hugo Gonzalez, Jose Baca, Erick Lopez, Mario Manjarrez and Ricardo Sandoval Guadarrama

## L.R. 11-6.2 – CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs certifies that this brief contains 2,896 words, which complies with the word limit of Local Rule 11-6.1.

DATED: October 26, 2026

McLANE, BEDNARSKI & LITT, LLP

By: */s/Lindsay Battles*

Lindsay Battles